Attorney General William R. Robinsett v. U.S. Department of Justice All right. You ready to go, Mr. Clark? All right. Mr. Moss, we'll hear from you. May it please the Court, Steve Moss on behalf of Mr. Robinett. Mr. Robinett appeals from the denial of 2255 relief, seeking to vacate his 180-month sentence on the basis that he is not guilty or no longer qualifies for the enhanced sentence pursuant to 924E, also known as the Armed Career Criminal Act, the ACCA. There are three issues noted in the brief. Based on this Court's en banc hearing of Missouri robbery just a few days ago in Swopes, I would propose to submit that issue on the brief or submit it pending disposition in Swopes and simply address the Kansas robbery issue and then the assault convictions. Well, what's the issue on the assault convictions? I thought in the district court you didn't dispute that the two assault convictions remain violent felonies. And, Judge, we disagree with that characterization of the record. Well, I'm just reading from your motion. Of those offenses, only the assault convictions remain violent felonies in the absence of the residual clause. So I take that to mean, wouldn't the ordinary reading of that mean that there are two assault convictions? Certainly the language there could have been more precise. However, if the court does look at the preceding sentence, the pleading does refer to two concurrent counts of assault in the second degree. And certainly I think more precision would have been warranted and appropriate in that case, but it was clear based on the pleadings as well as the government's response that the two convictions only counted as one conviction for ACCA predicate purposes because they did occur on the same occasion. Likewise in- Well, how do we know they occurred on the same occasion? What evidence did you put on to show that they were only a single occasion? We relied upon the PSI, which refers to two victims. It is one charging document with two counts, two victims on one occasion. That's what the PSI- No, you mean on one date because this is August 22, 1993. It could be a minute after midnight one day and a minute before the next day. It could have been in the morning and the afternoon. It could have been inside the bar and outside the bar. Well, certainly. How do we know? I understand. I understand. And this is what I'm going to rely on. The pleading refers to them as concurrent, which means at the same time, the government's response referred to them as a single assault conviction, singular. That's their conviction. That's District Court Document 5. Moreover, the government suggested that no evidentiary hearing was required because all of these things could be resolved without any sort of evidentiary hearing. Well, I think it's your burden, isn't it, in a habeas motion to show that these were- I think it- It's an illegal sentence. And, Judge, I guess I would just rely upon the original designation of those two as concurring counts of assault in the second degree and the government's failure to rebut that or challenge that and instead to basically concede by referring to it as a single assault conviction and likewise to submit that no evidentiary hearing would be required. Had that been a genuine issue, an evidentiary hearing would have been required. The original pleading does request a resentencing hearing. This was decided without a resentencing hearing. Additionally, this issue was never- not only was it conceded by the government, had it been brought up certainly in the reply brief, it would have been challenged specifically and the PSI could have been admitted, the documents, the charging documents could have been admitted to establish that that did occur on one occasion. So it's our view, Judge, that the initial pleading referring to these two assault convictions as concurring is sufficient, and if the court finds otherwise, then at a minimum allow a remand of the case and we can present those exhibits. I don't know why you say the government conceded it, but their response says, Robinette argues that only his two prior convictions for assault remain violent felonies. That's consistent with what I was calling the ordinary reading of your pleading. So I'm not- where do you say they conceded that it was just one? It's in the introduction on- I believe it's the second page. There is a sentence where they refer to- when they're listing all of Mr. Robinette's convictions, they refer to a prior conviction for assault. That's also noted in the reply brief on page 4 of the reply brief. In this case? In this case, yes. Very good. Did you object at the time of sentencing to the assertion in the pre-sentence report that there were two counts of secondary assault? That was not really- that was not objected to, and at that time there were a multitude of convictions that all counted. There were the burglaries that counted. There were the robberies that counted. There was an escape. There was an armed criminal action. So there was really, at the original sentencing under current law, there was really no question that Mr. Robinette had at least three. So there wasn't an objection to argue that, well, he really only has seven rather than eight, and those should be counted separately. I guess certainly more precision could have been used, but at the same time I believe the solution would be to remand the case if the court is inclined to feel that there's some confusion or ambiguity regarding that issue. Certainly based on the pleadings, it was assumed by the original pleading as well as the government's response that the assault conviction was not counting as two predicates, even though there were two convictions. So if the court is inclined to think that there's some ambiguity for that, we would simply request the remand and allow us to introduce those records because we're confident that that will show it was on one occasion and that those were concurring convictions as alleged in the indictment or as alleged in the original petition. I'm already close to my rebuttal time. I did want to at least address the Kansas robbery issue. I would ask the court to rely and to note on the case cited in the 28J letter where it refers to Nicholas, and although Nicholas was unpublished and it certainly wouldn't be binding on this court in any event, Nicholas provides a very helpful road map regarding that issue, and it clearly shows that Kansas robbery does apply to things such as purse snatchings. The district courts have all said that Kansas robbery is a violent felony, right? There are two. There are three, Nicholas, Bong, and Silva, some such name. I would have to look at Silva. I can tell the court that Nicholas and Bong were both decided by the same district judge. I don't think Silva was. I think Silva's a third judge over there, or second judge over there. But my point simply is, then it goes to the circuit, and the circuit does an unpublished opinion on this. What do you think the Tenth Circuit really? I wondered the same thing. Why would this be unpublished? Nicholas, which is cited in a government brief, is the Nicholas that's decided and reversed by the Tenth Circuit, so I don't know the intent there. But certainly the cases that they cited are clear. I would point out just the difference between Missouri. One difference that may be helpful, I know Kansas does not have stealing from a person, unlike Missouri. So Kansas doesn't have that hybrid in-between theft and robbery offense that Missouri does have, so it certainly makes sense that Kansas would define robbery a lot broader than Missouri would. I would like to reserve the very brief amount of time I have for rebuttal. Very well. Thank you. Mr. Clark, we'll hear from you. May it please the Court. My name is Bruce Clark. I'm an assistant United States attorney in Kansas City, Missouri, and I understand that with the Swoap's decision pending en banc that that's going to decide the Missouri robbery issue. So the majority of the time I'm going to take here is involved in the Nicholas case and the Kansas robbery. Well, before you spend your time in it, I think you ought to go to the assaults, because right? You can get two or one there, and it can make all the difference. You could. Yeah. And this is what happened with the assaults. In their initial motion, a 2255 motion, the FPD stated that the assault convictions remain violent felonies. The two assault convictions remain violent felonies. They never discussed the assault convictions. There's no analysis in their motion regarding the assault convictions. There's no mention of it other than that. The PSR, if you take a look at that, when it listed the number of convictions that qualified this defendant as an armed career criminal, it mentioned the two assault convictions. When the district court issued his order, he found first that Missouri robbery was a violent felony, and then he said, okay, that will really answer the question, because you still have the two assault convictions. Now, it is one conviction for guideline purposes because it occurred on one document. But for ACCA purposes, obviously, it can be two different convictions because they could occur on occasions different from one another. There's no evidence one way or the other about that. All we have is what's in the PSR. But it was never raised by the defendant, never discussed by the defendant, never objected to by the defendant. And there was never any proof by the defendant that they occurred at the same time, just as a charging document says they occurred on the same date, but it could have been on two different occasions. So I think that's- You say the judge said Missouri robbery counts and you have two assaults, so that's enough. And that's it. Was that at the original sentencing or in this proceeding? No, that's in this proceeding. He said the Missouri robbery counts, and I think he dropped a footnote and says, and the two assault convictions get you over the hump with the three convictions, but I'm going to analyze the Kansas robbery as well. All right. And he went ahead and found the Kansas robbery. So that's a footnote in the order. I think so. You can take a look there. So you think the district court did make a finding on two versus one? I think it did by that statement. It said that there are two assault convictions to go along with Missouri robbery. So I do, yeah, I believe that that's what the district court found, because that's what the defendant said. Well, he doesn't, I don't know if he made a finding, but he says that Moven doesn't dispute it. Yes. The footnote says, Moven does not dispute that his other two predicate offenses, two counts of second degree assault, qualify as predicate offenses without the use of the residual clause. Yes. If that's what you're referring to, that footnote. I believe so. I thought there was language in there that, you know, at this point we've got our three convictions, but he went ahead and analyzed the Kansas robbery conviction. Now, the Kansas robbery conviction is, I like the district court's rulings on that issue before the Tensor got a hold of it in the Nicholas case. Well, what about the purse snatching case? That seems to be the. . . McKinney? McKinney. Yeah, McKinney. I mean, if you just snatch the purse. . . Yeah. All right. Where does that leave you? McKinney was a conviction for murder, an aggravated robbery in connection with a murder, and then a separate, what they call, I believe they termed it a simple robbery. And in that case, the victim stated that she was walking with her purse, and the defendant came up, pushed her into or against a car, and took the purse from her. The defendant told the police that he didn't push her, but he did take the purse from her. The question at the appellate level was whether the judge should have instructed on a theft instruction, and the McKinney court decided that, no, there was a sufficient showing of force and threat of force, a threat of bodily harm, to justify a robbery. Even without the push, though, right? Apparently without the push. Now, the McKinney court opinion is about 13 pages long, and the discussion on the robbery is one paragraph. And in that one paragraph, the McKinney court misquoted the Aldershoff case. If you take a look at it, if you take McKinney's. . . They are establishing the law of Kansas, though. Yes, we're talking about Kansas. Now proceed. So in Aldershoff, what McKinney says happened in Aldershoff is that during a blackout, there were two purses on a table, and the thief ran off with them. What actually happened in the Aldershoff case is there was a blackout, there was a purse on the table, and the other purse was in the lap of the victim. And the thief, the robber, I guess thief as it was concluded, grabbed the purse off the table and grabbed the purse out of her lap and ran out. Now what the Aldershoff case was really concentrating on was when she ran out after him into the parking lot, she grabbed his shirt, he turned around, and he punched her in the eye. But what they said was that occurred after he had already acquired the property, and therefore that violence, which the United States would suggest under any definition would be a violent, a taking by force, occurred, or a forceful act, occurred too far after, I guess, the acquisition of the property to count as robbery. And that is really what Aldershoff does. But in that case, it analyzes the difference between larceny or theft and robbery, and really the amount of force necessary for that, much more than McKinney does. McKinney is, there's almost no analysis of McKinney. All right, so there's no analysis. But we know that, don't we know from McKinney that snatching the purse without the push is considered to be a robbery, and they say that that was enough force under Kansas law, at least. Actually, they do both. I mean, what apparently the state argued was that that is threat of bodily harm, which is an element of the robbery. And they say that is just so. And then they go back, and then they start talking about using force during the robbery. And in that respect, I guess the argument could be made that any time you are taking property from another individual in their possession, they're holding on to it, not maybe during a blackout where they can't see anything or anything, but during the daylight when you snatch a purse, when you grab a purse. That always has the threat of bodily harm associated with it. That seems to be what McKinney is saying. Yes. But now, is that true under the federal law? Is that enough to be a threat of force under the federal statute? I think it is. I mean, I don't think the threat has to be explicit. I think the act is an implied threat. I thought Johnson says it has to be force capable of causing physical pain or injury. Yes. And Kansas says it doesn't have to be physical pain or injury. Well, it has to be, well, or the threat of bodily harm. You think the Kansas case meant that there was a threat of bodily harm? I think that's what they're saying, that there was a threat of bodily harm. Well, they say both, actually. Like I said, they agree with the state, the prosecutor, that it's a threat of bodily harm, and then they later on say that it was force. There's almost no analysis of McKinney. I don't really understand or I don't really agree with basic decision on the McKinney case because there's nothing to analyze the amount of force involved in that case. I would suggest, though, that the briefs are on Westlaw and McKinney, for what that's worth to you. Okay. And the briefs are clear. He didn't push, didn't inflict injury, or otherwise use force. Well, she said he did. I mean, that was a testimony at trial. It seems like the briefs agree on that point, though. But go ahead. Well, because for jury instruction purposes, they went ahead and agreed with the defendant's version that he didn't push her. Her testimony was he pushed her into the car. And that, as I said, is an issue because McKinney simply doesn't have any analysis involved in it. But to go back to the threat of bodily harm issue, I think any time that somebody takes property from another individual, there is a threat of bodily harm. If somebody comes up to you or two people come up to you and say, give me your wallet. But this is just the snatching, though. I mean, I understand what you're saying, give me your wallet, there's something implicit. But I'm running by and I yank it off. It's such a quick act. Can it incorporate the threat that you're asking it to do? Okay, there's a separate issue with the amount of force involved in purse snatching. A lot of these cases are purse snatching cases. And what you see is that, like in Aldershoff, where she did resist, the guy turned around and punched her in the eye. You see cases where it's a simple purse snatching, but the victim's shoulder gets hurt. You see cases where he grabs the purse and her finger gets injured. What Johnson says is that it has to be an act that is incapable of causing pain. And we see in a number of purse snatching cases, when there's a struggle or when there is resistance, that pain occurs, that injuries occur. I guess you're saying if it's on her arm, there's at least some potential of threat of bodily harm. Maybe it would be different if the purse were sitting on the table. Or in her lap during a blackout. Or, as in the Tivis case where he's misdirecting the victim with a, I don't know, he was trying to sell her some figurine or something like that. And it was just a yank. But in many of these purse snatching cases, they come by and they grab it off the individual's arm or shoulder. That is an act that is capable of causing physical pain. All right. Thank you for your argument. Thank you. Mr. Moss, we'll hear you in brief rebuttal. Okay. Thank you, Your Honor. Mr. Moss, do you think that footnote's a finding? Excuse me? Do you think that footnote five's a finding? You'd have to, I'm not sure. Footnote three, you mean? Oh, I'm sorry. Well, I- Mine says three. Oh, boy. Are we on the same? Oh, we're looking at a different document. Different document. Sorry about that. I'm looking at the- No wonder I was staying away. No, that's okay. Oh, I'm back at Judge Finner's. Oh, I see. He has two footnotes on it. One footnote on page three. Oh, okay. See, there's progress here. But anyhow, I'm sorry we're taking your time, but it is an important point. Okay, three says he doesn't dispute, but five says the way it's worded, the as his, on page seven, footnote five, his assault and robbery convictions, plural? I don't believe how it's phrased in the order. Denying is determinative of what happens and how this court should review it. Just to reiterate, the initial pleading says concurring. The government reply on page two says prior conviction for assault, singular. Had the government argued that those were two, certainly that would have been addressed in the reply brief. I can tell you that Ms. Carterella reviewed over. Shouldn't you have asked immediately for Judge Finner to clarify it? I think it was assumed by the parties. It certainly was assumed by the government response and our response. That's not what the two footnotes say. Go ahead. I'm sorry. I mean, the judge certainly read it that you admitted the two. Well, that's and. Anyway, did you want to say something about the Kansas robbery? I would just, regarding the Kansas robbery, the two points that the court dealt with. First of all, Kansas does apply to person or presence, which is different than Missouri robbery and certainly force from the presence. So the idea of them having property and then running past another person as the owner tries to grab them would constitute robbery in Kansas, but not be the violent physical force required of Johnson. And then secondly, there is authority in Kansas that says any bodily harm generally is going to elevate the simple robbery to aggravated robbery, which necessarily presupposes that there can be force in taking without bodily harm, which in Kansas can be slight, can be trivial, can be minor. So we ask the court to follow Nicholas. And if we think the record is clear that it's one single occasion and we think an evidentiary hearing would be the solution here, it should be remanded if the court finds otherwise. Thank you. Thank you very much. The case is submitted and the court will file an opinion in due course.